**Roza KOLODNAY, Plaintiff-Appellant,**

**v.**

**Richard SCHWEIKER, as Secretary of Health and Human Services, Defendant-Appellant.**

**No. 885, Docket 81–6226.**

United States Court of Appeals, Second Circuit.

Argued March 22, 1982.

Decided May 20, 1982.

Mark Hus, Brooklyn, N. Y. (Steven M. Bernstein, Community Action for Legal Services, Inc., Brooklyn, N. Y., of counsel), for plaintiff-appellant.

Reuben S. Koolyk, Asst. U. S. Atty., Brooklyn, N. Y. (Edward R. Korman, U. S. Atty., E. D. N. Y., Abraham Y. Skoff, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for defendant-appellee.

Before LUMBARD and OAKES, Circuit Judges, and FRIEDMAN,* Chief Judge, United States Court of Claims.

OAKES, Circuit Judge:

■ This appeal is from a judgment of the United States District Court for the Eastern District of New York, Mark A. Costantino, Judge, affirming a determination of the Secretary of Health and Human Services to deny Roza Kolodnay's application for Supplemental Security Income (SSI). To obtain a grant of SSI, a claimant must show disability, which the administrative law judge found Mrs. Kolodnay did not do. We reverse and remand for an ultimate hearing before a different administrative law judge (ALJ).

The claimant, Roza Kolodnay, was born in 1925 and has a tenth-grade education. She speaks Russian and Yiddish and no English. She worked in the Soviet Union as a sewing machine operator until 1977. On March 28, 1980, one year after emigrating, she applied for SSI benefits claiming hypertension, a heart condition, and back problems. After her claim was denied, she appeared with counsel at a hearing before an administrative law judge. At the hearing Mrs. Kolodnay described experiencing high blood pressure, pain associated with a heart problem, ·headaches and dizziness, pain around her waist and right leg, and obesity; she spends most of the day lying down or walking in the house. Her daughter confirmed that the inability to walk without falling limited Mrs. Kolodnay's ability to perform even simple household duties, though the daughter accompanied her outside from time to time. During the brief hearing Mrs. Kolodnay had to stand up three times, apparently to relieve pain.

The principal medical evidence was provided by Dr. Joshua Rubinstein, to whom the claimant had been directed by the Social Security Administration. His report indicated that claimant is an obese woman

at 5 feet 5 inches and 237 pounds; that she has hypertension and a history of coronary artery disease and arthritis; and that she experiences dizziness, and pain and dyspnea when she exerts herself. He confirmed that she is unable to stand on her feet for a long time. In a Residual Functional Capacity Examination, based on Mrs. Kolodnay's medical history and upon a clinical examination and stress test results, the physician concluded that in an eight-hour work day, claimant could sit for one-half hour and walk for one-half hour but could not stand; that she could not bend, squat, crawl, or climb; that she could carry but not lift up to ten pounds; and that she could use her hands for grasping and fine manipulations, but not for pushing and pulling. Claimant also submitted the less detailed report of a medical examination performed by a physician who examined her at the request of the New York Association for New Americans. The report indicated that Mrs. Kolodnay suffered from hypertension, angina pectoris, obesity, and saccroccygeal pain. ALJ John M. Slater determined that the "medical evidence is convincing that claimant's medical condition is not severe and that she has no impairment or combination of impairments which would significantly limit her ability to perform work related functions." The Appeals Council denied review.

■ The ALJ found that "[c]laimant has essential hypertension" which "does not significantly limit her ability to perform work related functions." His findings, however, do not allude to appellant's obesity or to her angina pectoris, both of which are substantiated by the evidence, or to the testimony of the claimant and her daughter concerning her impairments that seemingly would prevent her from working. It is beyond dispute that obesity combined with hypertension, even in the absence of end organ damage, may constitute a severe impairment, see 20 C.F.R. §§ 416.920(d), 416.-925;[1] 20 C.F.R. Part 404, App. 1, Part A

---

* Sitting by designation.

1. These sections provide that an impairment listed in Appendix 1 of Subpart P of Part 404

will be considered severe enough to prevent a person from doing any gainful activity, and will therefore necessitate a finding of disability

§ 10.10(B),[2] as may angina pectoris, *see id.* § 4.00(E).[3] The ALJ was required under 20 C.F.R. § 416.922[4] to consider whether in combination these impairments are severe. Had he done so, there likely would not have been substantial evidence to support a finding that claimant's impairments are *not* severe, *see id.* §§ 416.920(c),[5] 416.921(a).[6] The medical reports—particularly the Residual Functional Capacity Examination[7]—combined with the uncontroverted subjective evidence demonstrate that as a result of her impairments, Mrs. Kolodnay's physical ability to perform such basic work activities as standing, walking, and lifting is significantly limited, and she therefore may be disabled. *See id.* § 416.920(c). Because the medical evidence is somewhat conclusory, however, we believe it is appropriate to remand under 42 U.S.C. § 405(g) to a different administrative law judge to permit the taking of additional medical evidence.

Having concluded that claimant did not have a severe impairment, the ALJ failed to decide whether, based on her residual functional capacity and the physical and mental demands of her past work as a sewing machine operator, Mrs. Kolodnay can still do that kind of work, *see* 20 C.F.R. § 416.920(f). If the administrative record on remand indicates that claimant's impairments make her unable to perform work as a sewing machine operator, since it is clear that claimant is over the age of 50, has a limited or marginal (for the United States) education, has work experience consisting only of unskilled jobs, and would be capable only of sedentary work, if any, under the Secretary's medical-vocational guidelines,

without regard to the claimant's age, education, and work experience.

2. Section 10.10, *inter alia*, provides that the following is a disability:

> *Obesity.* Weight equal to or greater than the values specified in . . . Table II for females (100 percent above desired level) and one of the following:
>
> . . . .
>
> B. Hypertension with diastolic blood pressure persistently in excess of 100 mm Hg measured with appropriate size cuff;
>
> . . . .

TABLE II—WOMEN

| Height (inches) | Weight (pounds) |
| --- | --- |
| . . . . | |
| 65 | 266 |

3. Section 4.00(e), *inter alia*, provides that the following is a disability:

> *Chest pain of cardiac origin* is considered to be pain which is precipitated by effort and promptly relieved by sublingual nitroglycerin or rapid-acting nitrates or rest. The character of the pain is classically described as crushing, squeezing, burning, or oppressive pain located in the chest. Excluded is sharp, sticking or rhythmic pain. Pain occurring on exercise should be described specifically as to usual inciting factors (kind and degree), character, location, radiation, duration, and response to nitroglycerin or rest.
>
> So-called "anginal equivalent" locations manifested by pain in the throat, arms, or hands have the same validity as the chest pain described above. Status anginosus and variant angina of the Prinz-metal type (e.g., rest angina with transitory ST elevation on electrocardiogram) will be considered to have the same validity as classical angina pectoris as described above. Shortness of breath as an isolated finding should not be considered as an anginal equivalent.

4. Section 416.922 provides in part:

> [W]e can combine unrelated impairments to see if together they are severe enough to keep you from doing substantial gainful activity. We will consider the combined effects of unrelated impairments only if all are severe and expected to last 12 months.

5. Section 416.920(c) provides:

> *You must have a severe impairment.* If you do not have any impairment(s) which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

6. Section 416.921(a) provides:

> *Non-severe impairment.* An impairment is not severe if it does not significantly limit your physical or mental abilities to do basic work activities.

7. Although the ALJ was not required to consider claimant's residual functional capacity, age, education, and work experience with respect to her ability "to do other work" until he determined preliminarily that her impairment was severe, *see* 20 C.F.R. §§ 416.905(a), 416.920(c), 416.945, he was certainly required to consider Dr. Rubinstein's Residual Functional Capacity Examination insofar as it indicated the severity of her impairments, *see id.* § 416.921(a), (b).

she would therefore be considered disabled. 20 C.F.R. Part 404, Subpart P, App. 2, Table No. 1, Rules 201.09–201.10. *See Parker v. Harris,* 626 F.2d 225, 234–35 (2d Cir. 1980).

Judgment reversed and cause remanded for a hearing by a different administrative law judge.